In the Matter of ALFRED S. BYRNE, an Attorney, Respondent.

First Department, June 21, 1940.

*S. C. Lewis* of counsel [*Einar Chrystie*, attorney], for the petitioner.

Respondent in person.

PER CURIAM. The respondent had as a client a partnership engaged in the linoleum business known as John Capek & Bro., for whom he had acted as attorney in various matters for about ten years prior to the making of complaint to the Bar Association. In April, 1932, he was requested to institute an action against one Damion Demetrowitz and his wife to recover the sum of $4,750, representing a balance due upon a written guaranty of payment of a bond and second mortgage assigned by them to Mr. Frank Capek. Between that time and 1937, in response to inquiries of Mr. Capek concerning the matter, the respondent told him that an action had been commenced, judgments entered against the defendants and that they had been examined in supplementary proceedings. Finally, in 1937, Mr. Capek consulted another attorney. At the suggestion of the latter, he asked the respondent to give him the file number of the case. The respondent thereupon gave him what purported to be an index number in New York county. Investigation disclosed there was no such number. On reporting this to the respondent, he stated that the girl in the office must have made a mistake. He furnished another number, with the same result.

The respondent finally admitted that no action had been instituted. He undertook in writing unconditionally to guarantee Mr. Capek against loss in the matter due to the negligence of his office.

When asked by the attorney to whom the matter was turned over by Mr. Capek why he had neglected it, he said he thought he might collect without suit and that he did not know what he was doing. The claim was reduced to judgment by the substituted attorney, but no more than $120 could be collected, the judgment debtors being insolvent. There was no proof, however, that the claim could have been collected if it had been pressed to judgment by the respondent when first turned over to him.

In 1934 the respondent was requested by Mr. Frank Capek to collect a claim against one Thomas J. Martin for rent and merchandise aggregating $505. The latter, with the consent of Mr. Capek, agreed to a settlement of the claim for the sum of $375, to be paid out of the proceeds of certain life insurance policies which he assigned to the respondent. Mr. Martin died on November 27, 1935. The respondent collected from the insurance company $658.97 for the benefit of the Martin heirs and Mr. Capek pursuant to the aforesaid assignment. He paid to the representative of the Martin heirs the sum of $283. He failed, however, to pay any portion of the balance of $375 to Mr. Capek. Instead, he applied same to his own use. Upon the hearing he falsely testified that Mr. Capek had agreed that he might retain $65 of the amount collected for his fee and keep the balance until demanded. The fact is that he kept putting his client off with false excuses for his failure to pay over the money. He finally paid $310 in installments of $100 in April, 1936, $100 in August, 1936, and $110 in July, 1938.

It further appears that in January, 1932, the respondent was requested to foreclose a mortgage upon certain property owned by the Merjay Realty Corporation. He filed a complaint and *lis pendens*. An order of reference was entered on May 19, 1935. By a report dated August 19, 1937, the referee computed the amount due to be $39,590.43. Thereafter the referee complained that the matter was being neglected. Mr. Capek transferred the case to another attorney for attention.

In extenuation of the use by the respondent of the $375 collected by him upon the Martin claim, it appears that his clients Capek concededly were indebted to him for services rendered in various matters in which he never had rendered a bill. Upon the matters of these clients being transferred to another attorney, the latter asked the respondent for an itemized statement of the work he had done, the disbursements incurred and the fees claimed. The respondent replied that his records were in such condition that he was unable to furnish such a statement. The attorney then suggested that in view of the severe loss that had been caused Mr. Frank Capek because of the respondent's negligence he did not

think he should make any demand for a fee. The respondent acquiesced in this and gave a general release to his clients dated August 31, 1937. On February 10, 1939, the respondent paid the sum of $400 on account of the guaranty he had given against loss in connection with the Demetrowitz claim. On or about March 2, 1939, he agreed to pay some $6,000 to Mr. Capek in lieu of damages because of his negligence in the Demetrowitz matter. He also gave a confession of judgment as provided for in said agreement. In addition to the $400 paid on February 10, 1939, as aforesaid, he made two or three payments of $50 each. Judgment was finally entered on his confession, against which $131.18 was collected.

It further appears that in June, 1937, one Richard Kennett retained the respondent to institute an action to recover damages for personal injuries sustained, caused by a dog owned by one Dr. Sossnitz. The respondent commenced an action on or about August 25, 1937. On April 6, 1938, a motion to dismiss for failure to prosecute was granted, over his opposition, unless a note of issue were filed for the May, 1938, term. He failed to file such note of issue, and on May 1, 1939, the action was dismissed. Without the knowledge of Mr. Kennett, the respondent commenced another action on his behalf in January, 1939. On April 9, 1938, he advised Mr. Kennett that a motion for a preference would be made. On September 9, 1938, he assured him that his case was progressing as well as could be expected. Thereafter Mr. Kennett was unable to obtain any information from the respondent in spite of numerous requests.

It thus appears that the respondent has been grossly neglectful of the interests of his clients and careless in his methods of practice. He ignored the letters of inquiry of the Bar Association and defaulted in appearance at the hearings of its grievance committee.

The respondent should be suspended for one year with leave to apply for reinstatement at the expiration of that term upon proof of his compliance with the conditions incorporated in the order.

Present — MARTIN, P. J., O'MALLEY, GLENNON, COHN and CALLAHAN, JJ.

Respondent suspended for one year.